# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
01/19/2022
CT Log Number 540901742

**TO:**   James C. Guyon, Senior Litigation Paralegal
Campbell Soup Company
1 CAMPBELL PL
CAMDEN, NJ 08103-1799

**RE:**   **Process Served in New York**

**FOR:**   Pepperidge Farm, Incorporated  (Domestic State: CT)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: Marili Rasay // To: Pepperidge Farm, Incorporated |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 2021CA004788B |
| **NATURE OF ACTION:** | Product Liability Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Priority Mail on 01/19/2022 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | New York |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  James C. Guyon  jim_guyon@campbellsoup.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>28 Liberty Street<br>New York, NY 10005<br>866-401-8252<br>EastTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

PRIORITY MAIL
POSTAGE REQUIRED

# UNITED STATES POSTAL SERVICE®

# PRIORITY MAIL

☑ Expected delivery date specified for domestic use.

☑ Most domestic shipments include up to $50 of insurance (restri

☑ USPS Tracking® included for domestic and many international cl

☐ Limited international insurance.**

☐ When used internationally, a customs declaration form is requir

*Insurance does not cover certain items. For details regarding claims exclusions s
Mail Manual at http://pe.usps.com.

** See International Mail Manual at http://pe.usps.com for availability and limitatio

# MAILING ENVELOPE
FOR DOMESTIC AND INTERNATIONAL USE

Service member full name:

Rank or rating (optional):

Military organization or unit:

APO/FPO (Air/Army Post Office™
or Fleet Post Office)
with 9 digit Zip Code:

APO or FPO

PRESS FIRMLY TO SEAL

TYVEK® IS RECYCLABLE.
©2001 DUPONT™ AND TYVEK® ARE TRADEMARKS OF DUPONT.

## USPS POSTAL SERVICE® Click-N-Ship®

9489 3036 9930 0000 5958 62 0497 0000 0831 0005

U.S. POSTAGE PAID

Mailed from 20009



# PRIORITY MAIL 2-DAY™

Expected Delivery Date: 01/18/22

0006

C012

01/14/2022  0 lb 8.oz

THOMAS C WILLCOX
ATTORNEY AT LAW
1701 16TH ST NW APT 211
WASHINGTON DC 20009-3112

RESTRICTED DELIVERY
SIGNATURE REQUIRED

SHIP
TO: PEPPERIDGE FARM, INC
CT CORPORATION SYSTEM
28 LIBERTY ST
NEW YORK NY 10005-1400

USPS SIGNATURE TRACKING #

9489 3036 9930 0000 5958 62

Electronic Rate Approved #038555749

PRESS FIRMLY TO SEAL



,Filed
_ D.C. Superior Court
12/23/2021 08:03AM
Clerk of the Court

# Superior Court of the District of Columbia

Marili Rasay
101 G Street, SW
A 407
Washington DC 20042

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Case Number: **2021 CA 004788 B**

Date: 12/20/21

Pepperidge Farm Incorporated
595 Westport Ave
Norwalk, CT 06851

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* Thomas C Willcox | Relationship to Lawsuit |
|---|---|
| Firm Name:<br>Thomas C. Willcox, Attorney | ☒ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.:<br>202 617 4210          445135 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury     ☒ 6 Person Jury     ☐ 12 Person Jury

Demand: $_ not in excess of $74,000     Other: Equitable relief

PENDING CASE(S) RELATED TO THE ACTION BEING FILED     in excess of $10,000

Case No.:_____ Judge: _____ Calendar #:_____

Case No.:_____ Judge: _____ Calendar#:_____

---

**NATURE OF SUIT:**     *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

| | | |
|---|---|---|
| ☒ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☒ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property |     Over $25,000 Pltf. Grants Consent |     Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees |     Under $25,000 Pltf. Grants Consent |     Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| |     Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile. |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander |     Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud |     Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
     (DC Code § 11-941)
- ☐ 10  Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
     (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
     Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
     Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
     Judgment [ D.C. Code §
     2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
     42-3301, et seq.)

- ☐ 21 Petition for Subpoena
     [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
     (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

12/7/21
_____
Date



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Marli Rasay
101 G Street, SW
A-407
Washington DC 20042

| | |
|---|---|
| Plaintiff | |

v.

Pepperidge Farm Incorporated
595 Westport Ave
Norwalk, CT 06851
Defendant

Defendant

**SUMMONS**

Case Number : **2021 CA 004788 B**

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**Thomas C. Willcox**
Name of Plaintiff's Attorney

**1701 16th Street, NW #211**
Address
Washington DC 20009

**202.239.2762**
Telephone

如需翻譯，請打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.     ለማስተርጎም ድውሉ (202) 879-4828 ይደውሉ

*Clerk of the Court*

By _____ Deputy Clerk

Date ____**12/22/2021**____

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Marili Rasay
101 G Street, SW
A 407
Washington DC 20042

v.

Pepperidge Farm Incorporated
595 Westport Ave
Norwalk, CT 06851
Defendant

——————————— Plaintiff

——————————— Defendant        o de Caso: ———————————

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Thomas C. Willcox
—————————————
Nombre del abogado del Demandante

1701 16th Street, NW, #211
—————————————
Dirección
Washington DC  20009
—————————————

202.239.2762
—————————————
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: ———————————————
                    Subsecretario

Fecha ———————————————

如需翻譯,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

만약 번역을 원하시면 (202) 879-4828로 전화주십시요.     የትርጉም አገልግሎት ከፈለጉ (202) 879-4828 ይደውሉ።

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

DISTRICT OF COLUMBIA SUPERIOR COURT
Civil Division

Marili Rasay                                    Jury Trial Demanded
101 G Street, SW
A 407
Washington DC    20042                   **Case No. 2021 CA 004788 B**

v.
Pepperidge Farm Incorporated
595 Westport Ave
Norwalk, CT 06851
      Defendant

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Marili Rasay ("Plaintiff"), by and through her counsel, brings this action against

the defendant named above on behalf of the General Public of the District of Columbia (the "DC

General Public"), and alleges the following based upon information, belief and the investigation

of counsel:

## NATURE OF CASE`

1. This is a representative action brought on behalf of Plaintiff and the DC general public who
   purchased Defendant's golden butter crackers.

2. The Defendant's golden butter crackers front and side paneling state the product is made
   with "real butter" or "butter".

3. However, these statements are at best misleading and at worse false.

4. In fact, the product contains vegetable oil in significant amounts, sprayed on the product
   during the baking process.

5. Further, over half of those shown the packaging in a marketing survey of a random sample
   of consumers believed that the product contained exclusively butter.

6. Plaintiffs and the DC General Public accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek appropriate relief.

7. The Plaintiff and the General Public seek to enjoin such fraud, obtain damages on behalf of the Plaintiff, and obtain an injunction against further such conduct in the District of Columbia

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over this action, and venue is appropriate in this Court, pursuant to D.C. Code §§ 11-921 and 28-3905(k)(1).

9. This Court has personal jurisdiction over the Defendant pursuant to D.C. Code §13-423, as Defendant sells its products at stores throughout Washington, D.C., and derives substantial revenues therefrom.

10. In addition, a substantial part of the actions which gave rise to the cause of action at issue occurred in this jurisdiction,

## THE PARTIES

11. Plaintiff Marili Rasay is a resident of the District of Columbia.

12. Defendant Pepperidge Farm is a nationwide purveyor of various processed foods, including crackers advertised as made with "golden butter" under its Pepperidge Farm brand.

## LEGAL FRAMEWORK - THE INTERESTS OF THE DC GENERAL PUBLIC MEMBERS AND THE GENERAL PUBLIC AND THE DC CONSUMER PROTECTION

13. The District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*, prohibits unlawful trade practices.  The prohibited trade practices include, in relevant part, actions that

   (a)  represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have

   (b). represent that goods have characteristics, uses, or benefits that they do not have;

   (d) represent that goods or services are of particular standard, quality, gade, style, or model, if in fact they are of another

   (e) misrepresent as to a material fact which has a tendency to mislead;

   (f) fail to state a material fact if such failure tends to mislead;

   (f-1), use innuendo or ambiguity as to a material fact, which has a tendency to mislead

   (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; and

   (x) to sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Code, Official Code, or by operation or requirement of federal law.

Section 3904.

14. Additionally, "the CPPA's extensive enforcement mechanisms apply not only to the unlawful trade practices proscribed by § 3904, but [also] to all other statutory and common law prohibitions." *Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 325-26 (D.C. 1999).

15. Prior to 2000, only a "consumer" could bring a private action under the CPPA.  However, in 2000, the City Council amended the CPPA to allow a "person" to bring an action on behalf of the general public of the District of Columbia.

16. The CPPA such a "Representative Action" to seek, as forth in more detail below, numerous remedies on behalf of the general public of the District of Columbia, D.C. Code § 28-3905(k)(1).

17. Plaintiff brings this action on behalf of himself and as a Representative acting for the interests of the general public of the District of Columbia, seeking relief from Defendant's

use of trade practices in violation of laws of the District of Columbia, pursuant to D.C. Code § 28-3905(k)(1).

18. The defendant's product as described herein is a "consumer good", and the defendant is a "merchant" within the meaning of the CPPA.  D.C. Code § 28-3901(1)(2) and (7).

**THE PURCHASE**

19. On June 16th 2021, Mrs. Rasay purchased a package of Pepperidge Farm Golden Butter Crackers (the Product") from a Safeway in Washington DC  A copy of the receipt, and photos of the product packaging are set forth infra.

*Figure 1*



*Figure 2*



*Figure 3*



*Figure 4*



*Figure 5*



20. Under the CPPA, such purchase is all that is necessary to give the plaintiff standing to be the

Representative in this action. D.C. Code § 28-3905(k) (2001) (whose 2000 amendments

replaced the word "consumer" with "person") and now specifies:

(k)(1) An individual may, on behalf of that individual, or on behalf of both
the individual and the general public, bring an action seeking relief from the
use of a trade practice in violation of a law of the District when that trade
practice involves consumer goods or services that the individual purchased
or received in order to test or evaluate qualities pertaining to use for personal,
household, or family purposes

21. The remedies available include:

(A) treble damages, or $1,500 per violation, whichever is greater,
payable to the consumer;
(B) reasonable attorney's fees;
(C) punitive damages;
(D) an injunction against the use of the unlawful trade practice;

> (E) in representative actions, additional relief as may be necessary
> to restore to the consumer money or property, real or personal,
> which may have been acquired by means of the unlawful trade
> practice; or
> (F) any other relief which the court deems proper.

22. The basis for the plaintiff's standing and the manifestation of his alleged injury in fact is

    similar to that in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982).

23. In *Havens*, a national housing rights organization had a black applicant and a white

    applicant submit identical resumes to an apartment complex for housing.  The purpose of

    the applications was not to obtain housing; instead, the purpose was to determine whether or

    not the apartment complex was engaged in racial discrimination.   The housing complex

    approved the application of the white applicant, but denied the application of the black one.

24. The *Havens* court held that the black application had standing to sue for damages, <u>even

    though he never had any intention of moving into the apartment</u>.

25. There, the Court determined that § 804(d) of the Fair Housing Act "established an

    enforceable right to truthful information concerning the availability of housing," id. at 373,

    102 S.Ct. 1114, and thus, plaintiffs were injured in fact and had standing to sue because of

    "deprivation of information about housing availability."

26. In *Molovinsky v. Fair Employment Council*, 683 A.2d 142 (1996), the DC Court of Appeals

    upheld the theory of tester liability.  In *Molovinsky*, in response to complaints that a

    prospective employer, Executive Suites, was violating the rights of a Mr. Henderson by

    harassing him during a job application violating Mr. Henderson's rights under DC law, the

    DC Fair Employment Commission designed a gender discrimination  program and arranged

    four testers, two men and a woman to pose as job seekers and visit Executive Suites. *Id* at

    145.

27. As each tester had the same experience as Mr. Molovinsky, the FEC sued Executive Suites, alleging violation of the employment laws. The jury awarded damages verdicts, including punitives, for not just Mr. Henderson, but also the individual testers. *Id* at 145.

28. Citing *Havens*, the DC Court of Appeals upheld the standing of the plaintiffs to bring suit, even though they had engaged in the interviews for the sole purpose of investigating whether or not unlawful activity was taking place.

29. Consistent with the above case law, the legislative history of the CPPA's 2000 amendments creating Representative Actions makes it clear that reliance is not required

30. According to the 2012 DCCPPA Amendment Committee Report (the "Report"), "tester standing" was created to allow consumers who offer to purchase, or actually purchase, products or services with the intent of determining whether those products or services are what they claim to be, to file suits against untruthful merchants. See D.C. Council, Report on Bill 19-0581 at 4-5 (November 28, 2012). The Report states that "consumers need not actually have been misled by a misrepresentation regarding a consumer good or service to have suffered an injury-in-fact giving rise to an actionable claim." *Id* at 4. The Report further states that "[l]ike the testers in *Havens* and *Molovinsky*, D.C. consumers must be allowed to offer to purchase, or actually purchase, products or services with the intent of determining whether those products or services are what they claim to be." *Id* at 5.

31. Consistent with the above precedent, in *Grayson v. AT & T Corp.*, 15 A. 3d 219 (DC 2011), a former employee of a telecommunications firm was aware that the firm was failing to escheat unused funds on prepaid telephone calling cards to the District of Columbia, as required by law. *Id* at 249-252.

32. In order to have standing to sue the company to cease this practice (again, with full

awareness the product was 'defective", and with no intention of using the product), the *Grayson* plaintiff purchased such telecommunications card. *Id.*

33. The DC Court of Appeals, invoking the *Havens* ruling, upheld the standing of said purchaser of prepaid telephone calling card to sue for alleged violations of the CPPA. Consistent with *Havens*, the Supreme Court ruled as such even though, as noted above, the plaintiff was an industry insider who knew when he purchased the product that it had the defects at issue. *Id.*

34. Further, the DC City Council had suspended funding of enforcement by the DC Attorney General's Office of the CPPPA. *Id* at 240.

35. Therefore, the liberal standing requirements conferred by *Grayson* on private plaintiffs are consistent with the intent of the DC City Council to "provide public interest organizations and private attorneys the ability to seek injunctive relief and disgorgement of ill-gotten gains in the public interest". *Id* at 240.

36. Post *Grayson* case law has largely followed its mandate. *See Julian Ford v. ChartOne, Inc.*, 908 A.2d 72, 83 (D.C. 2006) (holding that the definition of consumer transaction under D.C. Code § 28-3901(a)(7) includes "consumer purchases of business opportunities, and purchase of medical records for a lawsuit qualifies as purchasing a business opportunity") (emphasis added) *accord, Mostofi v. Mohtaram, Inc.*, 2013 D.C. Super. LEXIS 12 (November 12, 2013), in which a resident of Maryland bringing a CPPA §3905(k)(1) action bypassed supermarkets in Maryland to purchase Superior Court of the District of Columbia was held to have standing "to test whether that EVOO was "true extra virgin olive oil"), with the court noting:

> Ultimately, neither the intent of Plaintiff nor whether he 'manufactured' standing are dispositive of the question. No

precedent establishes that the Court must apply a 'good faith' standard to the actions of a plaintiff in order to find that the standing requirement has been met. Further, Plaintiff . . . does not need to demonstrate that he suffered any physical, emotional, or monetary injury; an actual or immediate statutory violation is sufficient to establish an injury-in-fact. . . . The motivations of the plaintiff in *Julian Ford* are similar to Plaintiff; both bought a good for the purpose of advancing litigation. <u>At the very least, Plaintiff qualifies as a consumer that engaged in a consumer transaction for the purchase of a business opportunity as defined in Julian Ford</u> . . . In the alternative, Plaintiff bought a bottle of Pompeian for personal consumption or to test that bottle, which does not disqualify Plaintiff under . . . .. D.C. Code § 28-3901(a)(7).

. . . .

If there is a genuine dispute of material fact whether Defendant misrepresented and sold EVOO of Italian origin, the harm would not be self-inflicted upon Plaintiff's purchase of Pompeian; rather the harm of an unlawful trade practice occurred once Defendant offered to sell that bottle of Pompeian in its store."

*Id* at *7 (emphasis added, internal citations omitted).

37.   In short, § 3905(k)(1) does not require reliance on the part of the plaintiff.

I.   The Deceptive Practices of the Defendant

38. When consumers see a food represented as "Golden] Butter Crackers," as depicted in the photographs set forth above, they will logically understand that a "butter cracker" is a type of cracker.

39. The meaning of compound words is greater than the sum of its parts, such that "butter cracker" does not mean "a cracker made with butter" but a cracker which is all or predominantly made with butter.

40. This means the reasonable consumer would interpret the phrase to mean that wherever butter could be used in the Product, it would be used instead of using its synthetic substitutes, i.e., vegetable oils.

41. The Product name is misleading because it contains a *non-de minimis* amount of vegetable oil.  Such is more than expected given the absence of any qualification of "Golden Butter."

42. Consumers prefer butter to chemically produced "vegetable" oils for reasons including taste, health and avoidance of highly processed artificial substitutes.

43. Butter is valued by consumers over vegetable oils because it does not contain the trans fats of vegetable oils.

44. Butter is less processed, since it is made by churning cow's milk, instead of chemical reactions to make vegetable oils.

45. Butter is rich in nutrients like calcium and Vitamins A and D.

46. Butter costs more than vegetable oils like soybean, sunflower or canola oil.

47. The Product's name is misleading because even though it contains butter, it contains a non-de minimis amount of butter substitutes, as indicated on the ingredient list.

48. In fact, the Defendants sprays the Product with warm vegetable oils immediately after they are taken from the oven they are passed through a unit where they are sprayed with warm vegetable oil.

49. The oil is distributed either from pressure nozzles, spinning discs or by electrostatic charge.

50. The oil dressing is applied at around 8–18% of the cracker weight, which is consistent with the amount of vegetable oil in the Product based on the Nutrition Facts.  *See*, Figure 6, *supra*, and the relevant language from that panel, reproduced below :

**MADE FROM:** ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), BUTTER (MILK), VEGETABLE OILS (CANOLA, SUNFLOWER AND/OR SOYBEAN), SUGAR, INVERT SYRUP, CONTAINS 2% OR LESS OF: SALT, MALTED BARLEY FLOUR, BAKING SODA, MONOCALCIUM PHOSPHATE.

MADE FROM: ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), BUTTER (MILK), VEGETABLE OILS (CANOLA, SUNFLOWER AND/OR SOYBEAN), SUGAR, INVERT SYRUP, CONTAINS 2% OR LESS OF: SALT, MALTED BARLEY FLOUR, BAKING SODA, MONOCALCIUM PHOSPHATE

51. The vegetable oil is used to improve the appearance of the cracker surface and enhancing the color to a golden yellow.

52. The use of vegetable oil in this way is misleading because the result is consumers will expect the Product to have more butter.

53. Though vegetable oils are typically "refined, bleached and deodorized," purporting to result in a food that is neutral in taste, the reality is different.

54. Vegetable oils, such as soybean oil, are highly susceptible to oxidation.

55. The result is "reversion" of the flavor back to the original crude oil before it was refined, bleached and deodorized.

56. The result is a flavor described as "beany," "powdery" or "fishy."

57. The added vegetable oils detract from the taste of the Product and cause the butter taste to be pushed to the background.

58. "Butter Crackers" exist in the marketplace which are made only with butter and not with vegetable oils.  See, Figure 6, below:

*Figure 6*



INGREDIENTS: Enriched Unbleached Flour (wheat flour, malted barley flour, niacin, reduced iron, thiamine mononitrate, riboflavin, folic acid), Butter (cream [milk], salt), Cane Sugar, Non-GMO Baking Powder (monocalcium phosphate, sodium bicarbonate, corn starch), Sea Salt, Topping Salt.

59. The "Sweet Butter Crackers" in the above image contain butter and no butter substitutes.

60. Defendant did not have to name the Product "Golden Butter Crackers," but chose to, since this is more enticing to consumers.

61. Indeed, Defendant could have used the term "Buttery", which is recognized as conveying what is in fact the truth of the Product: it has a lot of butter.[1]

62. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

63. Defendant's branding and packaging of the Product is designed to – and does –deceive, mislead, and defraud Plaintiff and consumers.

64. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

65. The value of the Product that Plaintiff purchased and consumed was materially less its value as represented by Defendant.

66. 30. Had the DC General Public known the truth, they would not have bought the Product or would have paid less for it.

67. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $2.64 for 9.75 ounces, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

68. The above analysis is consistent with a marketing survey performed by Propeller Insights, and its principal, Roger Mendez,   Propeller Insights is a full-service market research company.  Mr. Mendez has an BS and MBA from St. Cloud State University.  Between 2003 and 2016, Mr. Mendez worked at three different companies in marketing positions.  In 2016, he founded Propeller Insights. His resume is set forth below as Figure 7:

---

[1] https://www.macmillandictionary.com/us/thesaurus-category/american/words-used-to-describe-the-state-or-consistency-of-food "buttery ADJECTIVE buttery food has a lot of butter in it or tastes as if it has butter in it" (last visited December 14th 2021).

*Figure 7*

# ROGER MENDEZ

23679 CALABASAS RD, #8M4, CALABASAS, CALIFORNIA 91302 | 818-272-9975 | roger@propellerinsights.com

## PROFESSIONAL EXPERIENCE

### Propeller Insights
**Principal & Co-Founder**

Calabasas, California
February 2016-present

- A full-service market research company dedicated to helping you take your business to new heights. Leveraging our expertise within the market research industry, Propeller Insights will utilize all resources at our disposal to put you on the correct path to actionable business solutions

### Instant.ly

Encino, California

**Director of Research Solutions**
December 2012-February 2016
Sr. Manager, Research Solutions
August 2012-December 2012
Manager, Research Services Group
May 2010-August 2012
Project Manager
August 2008-May 2010

- I provide clients with custom research solutions (qualitative and quantitative) that are catered specifically to the industry (entertainment, marketing/advertising, automotive, market research, etc.) in which they operate.
- Solutions which I provide include consultation of overall project scope, questionnaire design, survey programming, project management (panel management, industry vendor relationship management, customized quota group management, dynamic traffic control), and providing customized data deliverables/reports.

### Greenfield Online
**Manager, Global Supply**

Encino, California
February 2007-August 2008

- I was responsible for ensuring the completion of all market research studies by contracting work to third party market research vendors.
- I have been successful in delivering multiple completed projects on a daily basis through an extensive third party global panel supply, COGS management, project management, and strong vendor relationships.

### Nutzwerk GmbH
**Manager, Global Supply**

Leipzig, Germany
May 2003-December 2003

- Based in Germany, I led the penetration and expansion of 1 brand and 7 services of internet related technology into the North and South American markets.
- Developed and expanded an international client base through the planning and execution of successful brand management, marketing, internet advertising, pricing and promotion strategy programs individually customized to fit the distinct culture and environment of each country within the desired target markets.

## EDUCATION

### St. Cloud State University
**Master of Business Administration**

St. Cloud, MN
January 2004-May 2006

- Focus on International Business
- Member of AIESEC – Outgoing Exchange (OGX)
- Dean's List

### St. Cloud State University
**Bachelor of Science, International Business**

St. Cloud, MN
August 2000-May 2003

- NCAA Student-Athlete (Football)
- Member of AIESEC – Outgoing Exchange (OGX)
- Dean's List

## SKILLS & QUALITIES

- Proficient in questionnaire design, analysis, project management, multiple survey sampling platforms and multiple survey programming platforms.
- Proficient in Microsoft's Excel, PowerPoint, Word, and Outlook.
- Spoken languages: English, Spanish, German, Italian

69. In July 2021, Propeller Insights conducted a survey with 403 participants ("the Study").

Appropriate questions were asked to screen out participants whose answers provide

incorrect results.  Affirmation of Roger Mendez, set forth below as Figure 8:

*Figure 8*

## AFFIRMATION OF ROGER MENDEZ

1.  I, Roger Mendez, pursuant to 28 U.S.C. § 1746, and pursuant to the penalties of perjury,

state the following facts to the best of my knowledge and belief.

2.  I am the principal and co-founder of Propeller Insights  Since my graduation from  St Cloud

State University in 2005 with an MBA, I have worked in market research, which includes

product marketing research at two different companies, before founding Propeller Insights

in 2016.

3.  In July 2021, Propeller Insights conducted a survey (the "Study") with 403 participants.  I

reviewed the questions personally to ensure the survey was conducted in a proper manner,

to prevent any bias or prejudices of participants from distorting the results

4.  Appropriate questions were asked to screen out participants whose answers provide

incorrect results.

5.  In short, Propeller Insights conducted the Study in a manner consistent with the proper

standard of care in the marketing survey industry.

6.  When shown the front of the Product box, the question was asked "Based on the product

image, which of the following would you expect to find in the products ingredients list" ,

with the options as responses as follows:

A.      No butter

B.      Some butter and some butter substitutes, like vegetable oils

C.      All butter and no butter substitutes

7. The following percentages were selected by the participants:

A- 3%

B- 38.2%

C- 58.8%

Respectfully Submitted

*Roger Mendez*
Roger Mendez
Principal
Propeller Insights.
Date: August 10 2021

70.

71. In short, Propeller Insights conducted the Study in a manner consistent with the proper standard of care in the marketing survey industry

72. When shown the front of the Product box, the question was asked "[b]ased on the product image, which of the following would you expect to find in the products ingredients list", with the options as responses as follows:

A.      No butter

B.      Some butter and some butter substitutes, like vegetable oils

C.      All butter and no butter substitutes

73. The following percentages, as shown in Exhibit C, were selected by the participants:

A- 3%

B- 38.2%

C- 58.8%

74. In short, the testing performed shows the reasonable consumer would believe that the

Product contains '[a]ll butter and no butter substitutes:".

75. The complete survey is set forth below as Figures 9 through 15:

*Figure 9*

ALL COMPLETES – Report for Project – 071621-1 – Butter Crackers Study

Response Counts

| Completion Rate: | 100% | |
|---|---|---|
| | Complete | 46 |
| | | Totals: 46 |

1. What is your age?



| Value | Percent | Response |
|---|---|---|
| 15 to 24 | 13.4% | 6 |
| 25 to 34 | 10.9% | 7 |
| 35 to 44 | 10.9% | 8 |
| 45 to 54 | 15.9% | 6 |
| 55 to 64 | 15.8% | 6 |
| 64+ | 15.8% | 6 |
| | | Totals: 46 |

*Figure 10*



| Value | Percent | Responses |
|---|---|---|
| Male | 49.1% | 198 |
| Female | 50.1% | 202 |
| Non-Binary | 0.7% | 3 |
| | | Totals: 403 |

3. In which region do you primarily reside?



| Value | Percent | Responses |
|---|---|---|
| Pacific: AK, CA, HI, OR, WA | 11.7% | 47 |
| Mountain: AZ, CO, ID, MT, NM, NV, UT, WY | 10.7% | 43 |

*Figure 11*

| Value | Percent | Responses |
|---|---|---|
| Great Plains: KS, IA, MN, ND, NE, SD, MO, OK | 7.2% | 29 |
| South Central: AR, TX, WV, LA, MS, AL, TN, KY | 17.4% | 70 |
| Upper Midwest: IL, IN, MI, OH, WI | 16.9% | 67 |
| Southeast: FL, GA, NC, SC | 13.9% | 56 |
| Northeast: CT, ME, MA, NH, NY, PA, RI, VT | 17.1% | 69 |
| Mid-Atlantic: DE, MD, VA, VA | 5.5% | 22 |
| | | Totals: 403 |

4. Which of the following, if any, have you purchased in the last 6 months? Select all that apply



| Value | Percent | Responses |
|---|---|---|
| Peanut Butter | 81.1% | 327 |
| Jelly | 68.9% | 287 |
| Bread | 86.2% | 382 |
| Milk | 91.5% | 368 |
| Macaroni & Cheese | 73.4% | 296 |
| Frozen Pizza | 77.3% | 311 |
| Fruits | 90.8% | 368 |
| Vegetables | 93.5% | 378 |
| Chicken | 89.8% | 362 |

*Figure 12*

| Value | Percent | Responses |
|-------|---------|-----------|
| Butter | 86.4% | 349 |
| Eggs | 93.1% | 376 |
| Crackers | 100.0% | 403 |

5. Which brand(s) of crackers, if any, did you buy in the last 6 months? Select all that apply.



| Value | Percent | Responses |
|-------|---------|-----------|
| Cheez-It | 68.5% | 248 |
| Ritz Original | 70.2% | 269 |
| Honey Maid Graham Crackers | 46.7% | 180 |
| Keebler Club Crackers | 38.7% | 148 |
| Goldfish Baked Snack Crackers | 48.6% | 186 |
| Crunchmaster Multi-Grain Crackers | 7.6% | 32 |
| Zesta Saltine Crackers | 34.8% | 136 |
| Pepperidge Farm Golden Butter | 13.3% | 54 |
| Other | 11.2% | 43 |

Figure 13



6.   Based on the product image, which of the following would

you expect to find in the products ingredients list?



| Value | Percent | Responses |
|---|---|---|
| All butter and no butter substitutes | 63.8% | 287 |
| Some butter and some butter substitutes, like vegetable oils. | 32.2% | 154 |
| No butter | 3.0% | 18 |
| | | Totals: 459 |

*Figure 14*

7. What is the highest level of education you completed?



| Value | Percent | Responses |
|---|---|---|
| Completed some high school | 2.7% | 11 |
| High school graduate | 22.8% | 92 |
| Completed some college | 23.5% | 95 |
| Associate degree | 11.9% | 48 |
| Bachelor's degree | 23.3% | 94 |
| Completed some postgraduate | 3.6% | 14 |
| Master's degree | 10.2% | 41 |
| Ph.D., law or medical degree | 1.7% | 7 |
| Other advanced degree beyond a Master's degree | 5.7% | 3 |
| | | Totals: 403 |

8. What is your ethnicity? Select all that apply.

Figure 15



| Value | Percent | Responses |
|---|---|---|
| African American | 8.2% | 37 |
| Asian (non Pacific Islander) | 4.7% | 19 |
| Caucasian | 77.7% | 313 |
| Central Asian | 0.2% | 1 |
| Chinese | 1.5% | 6 |
| Filipino | 1.3% | 5 |
| Hispanic/Latino | 5.7% | 23 |
| Middle Eastern/North African | 0.2% | 1 |
| Mixed Racial from Caribbean Islands | 1.0% | 4 |
| Native American, Eskimo, Aleutian | 2.0% | 8 |
| Native Hawaiian/Pacific Islander | 0.5% | 2 |
| Other Ethnicity | 1.7% | 7 |

This Document for Website 1.1 Phone #8646896

II.     The Reliance of The General Public on the Defendant's
Representations

76. The General Public was exposed to, read, and relied upon Defendant's claims upon the

Products' labeling and packaging that were intended to appeal to consumers, such as

themselves, who are interested in products with butter flavor, and in particular, foods that

are just but "butter", but all "golden butter".

77.  Such claims are false, and the Plaintiff seeks to enjoin such conduct and obtain damages for

herself, injunctive relief and attorneys fees.

**Count 1**
**Violation of the CPPA**
**Implied and Express Warranties**
**Section 3904(x)**

78.  Plaintiff incorporates the allegations of paragraphs 1 through  77 as though fully set forth

herein, and alleges further:

79. As noted above, the CPPA, §28-3904, provides that is it a violation  "whether or not any

consumer is in fact mislead, deceived or damaged thereby" for any person to , inter alia,

"sell consumer goods in a condition or manner not consistent with state or federal law."

80.  Section 313 of the D.C. UCC (DC Code § 28:313 provides:

(1) Express warranties by the seller are created as follows:

(a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the
goods and become part of the basis of the bargain creates an express warranty that the
goods shall conform the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an
express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express
warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal
words such as "warrant" or "guarantee" or that he have a specific intention to make a
warranty, but an affirmation merely of the value of the goods or a statement purporting to

be merely the seller's opinion or commendation does not create a warranty.
D.C. Code § 28-314 provides:

(a) Unless excluded or modified . . . a warranty that the goods shall be
merchantable is implied in a contract for their sale if the seller is a
merchant with respect to goods of that kind. Under this section, the serving
for value of food or drink to be consumers either on the premises or
elsewhere is a sale.

(b) Goods to be merchantable must be at least such as . . .

( i ) In the case of fungible goods, are of fair average quality within the
description; and

(ii) Are fit for the ordinary purposes for which such goods are used; and

(iii) Are adequately contained, packaged, and labeled as the agreement may
require; and

(iv) Conform to the promises or affirmations of fact made on the container or label, if any.

81. Plaintiff and DC consumers have purchased the Product from the Defendant. The above-

referenced warranties apply to the Product. The Defendant has failed to honor these

warranties.

82.  The Product is not merchantable because it does not conform to the promises or

affirmations covered.

83. §28:2-607 (3) (A) requires that a buyer must within a "reasonable time after he discovers or

should have discovered any breach notify the seller of breach or be barred from any

remedy;"

84. Plaintiff's counsel, on behalf of her and the DC Public, have given such notice.

85. Defendant's breaches of its Express Warranties and the Implied Warranty of

Merchantability, and its sale of consumer goods in a condition and in a manner inconsistent

with D.C. law and contrary to the operation and requirements of federal law constitute

unlawful trade practices, which violate the rights of the Plaintiff and the DC General Public

as protected by the CPPA. D.C. Code § 28-3904(x).

**Count 2 –**
**Violations of the CPPA –**
**Various subsections**

86. Plaintiff incorporate the allegations of paragraphs 1 through 77 as though fully set forth herein, and alleges further:

87. By marketing the Product in the manner described above, the Defendant violated the various provisions of Section 3904 of the CPPA, set forth in more detail in paragraph 13, page 3 above, in particular, Section 3904 (f-1), "use innuendo or ambiguity as to a material fact, which has a tendency to mislead."

88. Further, the representations as to Product are a violation of §3904(x).

89. Such violations are actionable under the CPPA, and make the relief requested below appropriate.

III.   PRAYER FOR RELIEF

WHEREFORE, as to Count I and II of the Complaint, Plaintiff, on behalf of the general public of the District of Columbia, asks this court to award:

statutory or actual damages, trebled, for Plaintiff, except she disclaims any damages in excess of $74,000;

attorneys' fees; and

an injunction against the Defendant's' violations of the CPPA; and

any other relief this court deems just and proper.

Respectfully Submitted

*Thomas C. Willcox*
Thomas C. Willcox, Attorney at Law

DC Bar No 445135
1701 16th Street, N.W
Suite 211
Washington DC   20009
Tel: 202.239.2762
T.C. 202.234.0892
thomaswillcox@willcoxlaw.com.co
Attorney for Plaintiff



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

MARILI RSAAY
    Vs.                                                                  C.A. No.        2021 CA 004788 B
PEPPERIDGE FARM INCORPORATED

### INITIAL ORDER AND ADDENDUM

#### Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to:  Judge TODD E EDELMAN
Date:      December 21, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, March 25, 2022
Location:   Courtroom JM-4
           500 Indiana Avenue N.W.
           WASHINGTON, DC  20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,   "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.   Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

### Civil Remote Hearing Instructions for Participants

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option 1** **(AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the **Audio Alternative**

**Option 2** **(LAPTOP/ DESKTOP USERS 1):**

    Open Web Browser in Google Chrome and copy and paste following address from the next page:
    https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3** **(LAPTOP/ DESKTOP USERS 2):**

    Open Web Browser in Google Chrome and copy and paste following address
    https://dccourts.webex.com  Select **Join**, enter the Meeting ID from the next page

**AUDIO ALTERNATIVE:**  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4** **(Ipad/SMART PHONE/TABLET):**

-   Go to App Store, Download WebEx App (Cisco WebEx Meetings)
-   Sign into the App with your Name and Email Address
-   Select Join Meeting
-   Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
-   Click join and make sure your microphone is muted and your video is unmuted (if you need to be
-   seen). If you only need to speak and do not need to be seen, use the audio only option.
-   When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

CAIO-60

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).**  After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom.  Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60