UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARILI RASAY, | |
| Plaintiff, | Civil Action No. 22-449 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| PEPPERIDGE FARM, INC., | |
| Defendant. | |

**MEMORANDUM OPINION**

In June 2021, plaintiff, a D.C. resident, while shopping at a supermarket in Washington, D.C., purchased defendant Pepperidge Farm Inc.'s Golden Butter crackers in a box with packaging that indicated the crackers were "made with 'real butter.'" Compl. ¶¶ 2, 11, 19, ECF No. 1-1. After learning the crackers contained a substantial amount of vegetable oil, in addition to butter, plaintiff brought two deceptive advertising claims against defendant in D.C. Superior Court under the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. CODE § 28-3901 *et seq. See id.* ¶¶ 13, 17. Defendant thereafter removed the case to this Court based on the complete diversity of citizenship of the opposing parties under 28 U.S.C. § 1332(a). Def.'s Not. Removal ¶¶ 6–16 ("Def.'s Not."), ECF No. 1. Plaintiff now moves to have this case remanded back to Superior Court, Pl.'s Mot. Remand to Dist. of Columbia Superior Ct. ("Pl.'s Mot."), ECF No. 8, and, for the reasons explained below, this motion is granted.

I.  **BACKGROUND**

On June 16, 2021, at a Giant Food supermarket in the District, plaintiff purchased a box

1

of defendant's Golden Butter crackers. Compl. ¶ 19.[1]  Pictures of the box included in the Complaint show packaging that featured a stack of crackers under the text "GOLDEN BUTTER," with labeling on the side panel stating that the "Golden Butter crackers are made with real butter." *Id.* at 6–9.  The words "Golden Butter" and "real butter" are bolded and printed in a contrasting orange font. *Id*. at 8.

Several months after purchasing these crackers, plaintiff filed suit against defendant in Superior Court under the CPPA, "on behalf of [her]self and as a Representative acting for the interests of the general public of the District of Columbia." *Id.* ¶ 17; *see also* D.C. CODE § 28-3905(k)(1)(B).[2]  She alleges that, because "the product contains vegetable oil in significant amounts," the statements on the "front and side paneling" of the Golden Butter crackers package that "the product is made with 'real butter' or 'butter'" are "at best misleading and at worse false," Compl. ¶¶ 2–4, such that defendant has violated the CPPA prohibition on using "innuendo or ambiguity as to a material fact, which has a tendency to mislead," *id.* ¶ 87 (quoting D.C. CODE § 28-3904(f-1)).  Plaintiff further alleges that defendant has violated the implied warranty of merchantability, as well as "[e]xpress [w]arranties" regarding the nature of the product, *id*. ¶¶ 80–85, as the words "butter cracker" naturally signify "a cracker which is all or predominantly made with butter," *id.* ¶ 39.

Plaintiff seeks "to enjoin [defendant's] conduct and obtain damages for herself, injunctive relief, and attorney[']s fees," *id.* ¶ 77, as well as "any other relief this court deems just and

---

[1] The Complaint states that plaintiff purchased the Golden Butter crackers "from a Safeway in Washington, DC," Compl. ¶ 19, but the receipt shown in Figure 1 is from a Giant Supermarket in the Columbia Heights neighborhood, *see id*. at 5.

[2] In bringing a CPPA suit, a plaintiff may proceed in one of two ways:  either on her own behalf, "or on behalf of both the [plaintiff] and the general public." D.C. CODE § 28-3905(k)(1)(B).  Proceeding with a CPPA claim is distinct from, and does not require, a class action claim under the Class Action Fairness Act.  *See, e.g.*, *Clean Label Project Found. v. Abbott Lab'ys, Inc.*, No. 21-cv-3247 (BAH), 2022 WL 1658813, at *6–*7 (D.D.C. May 25, 2022); *Breakman v. AOL, LLC*, 545 F. Supp. 2d 96, 101 (D.D.C. 2008); *Zuckman v. Monster Bev. Corp.*, 958 F. Supp. 2d 293, 304–05 (D.D.C. 2013).

proper," although she "disclaims any damages in excess of $74,000," *id.* at 30, Prayer for Relief. On the cover sheet filed with the Complaint in Superior Court, she states a demand for "equitable relief in excess of $10,000," *see* Def.'s Not., Ex. A, Superior Ct. of the Dist. of Columbia Civ. Div. – Civ. Actions Branch Info. Sheet, *Rasay v. Pepperidge Farm. Inc.*, No. 2021 CA 4788 B, at 3 ("Superior Ct. Cover Sheet"), ECF No. 1-1, although this demand is not included in the Complaint itself, *see generally* Compl.

On February 18, 2022, defendant timely removed the suit to this Court, *see* Def.'s Not. at 1, and plaintiff, on April 5, 2022, timely filed the instant motion to remand to Superior Court, *see* Pl.'s Mot. at 1.³ Defendant opposed plaintiff's motion, *see* Def.'s Opp'n Pl.'s Mot. Remand to Dist. of Columbia Superior Ct. ("Def.'s Opp'n"), ECF No. 10, and plaintiff filed no reply. The requisite time for plaintiff to do so has now passed, *see* D.D.C. Local Civil Rule 7(d) (providing seven days for reply), and the motion is ripe for resolution.

## II.  LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). For a district court to exercise diversity jurisdiction, the parties must be "citizens of different States" and "the matter in controversy [must] exceed[] the sum or value of $75,000." *Id.* § 1332(a). "When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case, and

---

³       A notice of removal must be filed within 30 days of service of the summons and complaint on defendant. 28 U.S.C. § 1446(b)(1). Here, the Complaint was filed on December 20, 2021, with service effected on January 19, 2022. Def.'s Not. ¶¶ 1, 4. Accordingly, the February 18, 2022, notice of removal falls within the authorized 30-day timeframe. A motion to remand for lack of subject matter jurisdiction may be made "at any time before final judgment," 28 U.S.C. § 1447(c), and thus plaintiff's motion is also timely.

the court's order remanding the case to the state court whence it came 'is not reviewable on appeal or otherwise.'" *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28 U.S.C. § 1447(c) and quoting *id.* § 1447(d)); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374, 389–90 (2016) (noting that the "'deeply felt and traditional reluctance . . . to expand the jurisdiction of the federal courts through a broad reading of jurisdictional statutes' . . . thus [serves] to help maintain the constitutional balance between state and federal judiciaries" (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 379 (1959))).

A defendant seeking the exercise of federal court jurisdiction over a removed case "bears the burden of pleading" the basis for jurisdiction. *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 906 (D.C. Cir. 2006) (citation omitted); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction [authorized by Constitution and statute], and the burden of establishing the contrary rests upon the party asserting jurisdiction." (internal citations omitted)); *Apton v. Volkswagen Grp. of Am., Inc.*, 233 F. Supp. 3d 4, 11 (D.D.C. 2017). Absent such a showing, a "court must remand the case." *Johnson-Brown v. 2200 M Street LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003) (citing 28 U.S.C. § 1447(c)). "In light of the significant federalism concerns involved, this court strictly construes the scope of its removal jurisdiction," *RGI Events & Pub. Rels., LLC v. Al Qurm Mgmt. Consultancy* ("*RGI Events*"), No. 18-cv-1828 (BAH), 2019 WL 935498, at *2 (D.D.C. Feb. 26, 2019) (quoting *Moses v. SunTrust Mortg., Inc.*, No. 11-cv-822 (BJR), 2012 WL 113375, at *2 (D.D.C. Jan. 13, 2012)), resolving "any ambiguities concerning the propriety of removal in favor of remand," *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d

4

53, 56 (D.D.C. 2017) (quoting *Johnson-Brown*, 257 F. Supp. 2d at 177); *see also Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 297 (D.D.C. 2013).

### III.   DISCUSSION

Defendant asserts that diversity jurisdiction properly lies because the parties have diverse citizenship and the amount in controversy exceeds $75,000, under the familiar tenets of 28 U.S.C. § 1332(a). Def.'s Not. ¶ 6. Plaintiff is a citizen of the District of Columbia and defendant is a citizen of Connecticut with its principle place of business in Connecticut and, thus, the parties are indeed diverse. *See id.* ¶¶ 9–10; Compl. ¶ 11. The question of whether this Court has jurisdiction turns on the amount in controversy.

As discussed above, plaintiff seeks (1) "statutory or actual damages, trebled," disclaiming "any damages in excess of $74,000"; (2) attorney's fees; and (3) "an injunction against the Defendant's[] violations of the CPPA." Compl. at 30. Defendant argues that the amount in controversy passes the jurisdictional bar, first—and most significantly—because plaintiff prays for damages as much as, but not "in excess of[,] $74,000." Def.'s Opp'n at 3–5. Adding the cost of attorney's fees and equitable relief to the mix, defendant contends, brings the total amount in controversy above $75,000. *Id.* at 6–8.

Plaintiff disagrees with defendant's position on several fronts, first arguing that $74,000 is an inappropriate damages figure for purposes of calculating the amount in controversy. *See* Pl.'s Mem. Supp. Mot. Remand to Dist. of Columbia Superior Ct. ("Pl.'s Mem.") at 3, ECF No. 8-1. Plaintiff also asserts that attorney's fees cannot be considered as part of the amount in controversy, *id.* at 6, and that because her request for "equitable relief" simply reflects the costs defendant would bear in complying with an injunction against its CPPA violations, this figure must be credited toward the amount in controversy on a *pro rata* basis, *id.* at 4–5. Estimating damages far below $74,000, and allocating only a small slice of the injunctive costs to herself,

5

plaintiff argues the amount in controversy in the suit remains far below the threshold for litigating in federal court.

When a case is removed to federal court, under 28 U.S.C. § 1446(a), "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court," *Dart Cherokee Basin Operating Co., LLC v. Owens* ("*Dart Cherokee*"), 574 U.S. 81, 87 (2014), and "[w]hen the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so," *id*. at 84 (citing 28 U.S.C. § 1446(c)(2)(A)). When a plaintiff challenges the figure cited by defendant, however, the court must "decide[], by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 88. The burden of proof remains with the defendant, as the D.C. Circuit has "emphasized that . . . the party asserting jurisdiction always bears the burden of establishing the amount in controversy once it has been put in question." *Bronner ex rel. Am. Studies Ass'n v. Duggan*, 962 F.3d 596, 610 (D.C. Cir. 2020) (quoting *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993) (omission in original)).

For the reasons set forth below, defendant here has not met its burden of demonstrating that the statutory damages exceed $74,000, nor that attorney's fees and the costs of equitable relief—when allocated appropriately—would satisfy the jurisdictional threshold of $75,000 in controversy. Jurisdiction over the instant suit is therefore lacking.

The parties' arguments regarding the amount of statutory damages appropriately attributed to plaintiff for the amount in controversy are discussed first, followed by the attorney's fees and the injunctive relief she also seeks.

### A.  Statutory Damages

The parties' dispute principally turns on the amount of statutory damages considered to be "in controversy" for purposes of establishing diversity jurisdiction. Recall that plaintiff seeks

"statutory or actual damages, trebled, . . . except she disclaims any damages in excess of $74,000." Compl. at 30. Defendant argues that plaintiff's self-imposed cap of $74,000 should be used to estimate the statutory damages contributing to the amount in controversy. *See* Def.'s Not. ¶¶ 14–15. Plaintiff, on the other hand, maintains that the contested sum comes nowhere close to that figure, *see* Pl.'s Mem. at 3, pointing to the strict parameters and limits applicable to statutory damages.

As noted above, CPPA allows a victorious plaintiff to recover either (1) triple the actual damages suffered, or (2) $1,500 for each CPPA violation, "whichever is greater." D.C. CODE § 28-3905(k)(2)(A). Here, the Complaint alleges no "actual damages" suffered by plaintiff, and she clarifies in the instant motion that "she is proceeding on a theory of statutory damages," rather than actual damages. Pl.'s Mem. at 3. As such, plaintiff estimates that her "maximum payout is not likely to be more than that allowed" under the CPPA "of $1500 per violation." *Id.* at 3 (citing D.C. CODE § 28-3905). The Complaint references only one recorded purchase of Golden Butter crackers, *see* Compl. ¶ 19, for which plaintiff alleges two violations of the CPPA: first, that defendant breached its "Express Warranties and the Implied Warranty of Merchantability," *id.* ¶ 85, in violation of D.C. CODE § 28-3904(x); and second, that defendant used misleading "innuendo or ambiguity as to a material fact," in violation of D.C. CODE §§ 28-3904(f-1) & (x). *See id*. ¶¶ 87–88.[4] As such, were plaintiff's suit to succeed, the statutory

---

[4] While defendant is correct that "plaintiff does not . . . define what she is interpreting as a violation" or "specify the *number* of violations she is suing on," Def.'s Opp'n at 5 (emphasis in original), courts interpreting the CPPA have understood a "violation" of the statute to be coterminous with a "purchase." *See Sloan v. Soul Circus, Inc.*, No. 15-cv-1389 (RC), 2015 WL 9272838, at *8 (D.D.C. Dec. 18, 2015) ("The statute implies . . . that CPPA statutory damages awards flow from a *purchase or receipt* of consumer goods or services." (emphasis in original)); *Inst. for Truth in Mktg v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 89 (D.D.C. 2018) (plaintiff "brought unfair marketing claims under the CPPA regarding ten different products . . . which makes for a total of $15,000 in civil penalties"); *Clean Label Project Found. v. Now Health Grp., Inc.*, No. 21-cv-11 (JDB), 2021 WL 2809106, at *6 (D.D.C. July 6, 2021) (calculating "the maximum potential statutory damage award" for a plaintiff who "purchased only three units of [defendant]'s products" to be "$1,500 x 3 (units) = $4,500"); *Hackman v. One Brands, LLC*, No. 18-cv-2101 (CKK), 2019 WL 1440202, at *2 (D.D.C. Apr. 1, 2019) ("Defendant has sold over

damages available for the Court to award would amount to, at most, $3,000. *See Fahey v. Godiva Chocolatier, Inc.*, No. 19-cv-2128 (JDB), 2020 WL 805776, at *1, *5 (D.D.C. Feb. 18, 2020) (for purposes of determining the amount in controversy in a CPPA suit, estimating statutory damages to be $1,500 per violation, or $7,500 for plaintiff's purchase of five allegedly defective candy bars, even where the Complaint sought "statutory or actual damages, trebled, . . . except . . . in no case . . . an amount in excess of $74,000"); *Sloan v. Soul Circus, Inc.*, No. 15-cv-1389 (RC), 2015 WL 9272838, at *9 (D.D.C. Dec. 18, 2015) (finding defendant "failed to establish [plaintiff]'s total statutory damages by a preponderance of the evidence" where its "claims about [plaintiff]'s statutory damages [were] speculative and unsupported," and estimating that the "total statutory damages would be just $6,000," or "one award of $1,500 in statutory damages" for "each ticket purchase . . . far below the $75,000 amount in controversy required").[5]

Even if plaintiff does "refus[e] to admit or stipulate" what her damages will be if she prevails, Def.'s Opp'n at 4 (quoting *O'Hern v. Layton*, No. 08-cv-4934 (RMD), 2008 WL 5100460, at *2 (N.D. Ill. Dec. 1, 2008)), defendant makes no attempt to explain how plaintiff might ever hope realistically to obtain $74,000 in statutory damages, given that she "proceed[s]

---

12,000 individual bars to consumers in the District of Columbia . . . [a]nd, the []CPPA imposes statutory damages of $1,500 per violation," so, "the amount in controversy is as high as $18,000,000."). Thus, plaintiff's claim, in two separate counts, of violations of two different provisions of the CPPA, may plausibly entitle her, should she prevail, to as much as $3,000 in damages for her one purchase. Regardless, whether CPPA statutory damages are calculated by the number of purchases or by the number of claimed violations, the statutory damages available to plaintiff are a mere sliver of the amount necessary to obtain federal jurisdiction over this suit, and defendant offers no alternative definition of "violation" that could lead to a different jurisdictional outcome.

[5]      Defendant attempts to rebut this low figure by noting that, although the Complaint alleges "only a single purchase of [defendant's] Golden Butter crackers" was made, "[a]t no time in her complaint or the remand motion does plaintiff attempt to limit her damages to a single sale or single penalty." Def.'s Opp'n at 5 n.3. Yet, even if plaintiff later amended her Complaint to add additional purchases of goods sold in violation of the CPPA, she would have to allege 50 violations of the CPPA before the statutory damages reached $75,000. Nothing in the record provides any reason to suppose that plaintiff would seek or recover statutory damages at that scale, and extending federal jurisdiction to this suit based on so flimsy a hypothetical runs counter to this Court's obligation, "[i]n light of the significant federalism concerns involved," to "strictly construe[] the scope of its removal jurisdiction.'" *RGI Events*, 2019 WL 935498, at *2 (quoting *Moses*, 2012 WL 113375, at *2).

on a theory of statutory damages," Pl.'s Mem. at 3, and alleges only two violations of a statute awarding $1,500 per violation.[6] The Supreme Court has been clear that defendant bears the burden of demonstrating, by a preponderance of evidence, that the actual measure of the amount in controversy meets the jurisdictional threshold. *See Dart Cherokee*, 574 U.S. at 88. While not the picture of clarity, plaintiff's Complaint gives the Court no reason to believe the statutory damages in controversy are anywhere near $74,000, and defendant has not met its burden of proving otherwise.

### B.  Attorney's Fees

Just as the statutory damages sought in this lawsuit are nowhere near the $74,000 cap imposed by plaintiff, the other forms of relief sought by plaintiff come no closer toward bringing the amount in controversy above the jurisdictional threshold of $75,000.[7] As to plaintiff's

---

[6]  Defendant accuses plaintiff of "engag[ing] in a 'cat-and-mouse game'" by disclaiming damages "in excess of $75,000" purposefully to avoid federal jurisdiction. Def.'s Opp'n at 4 (quoting *O'Hern*, 2008 WL 5100460, at *2). That may be the case, but "[e]vidence that the plaintiff has drafted his complaint with an eye toward the amount-in-controversy requirement does not, by itself, demonstrate the legal deficiency of his claim for damages or that he has acted in bad faith." *Saiyed v. Council on Am.-Islamic Rels. Action Network, Inc.*, 742 F. Supp. 2d 84, 89 (D.D.C. 2010). The out-of-circuit cases from two district courts cited by defendant to the contrary, *see* Def.'s Opp'n at 4 (citing *O'Hern*, 2008 WL 5100460, at *2; *Troiani v. Allstate Ins. Co.*, No. 06-cv-67 (HGT), 2006 WL 1851378, at *4 (S.D. Tex. July 3, 2006)), are not binding nor, on this point, persuasive, given that they clash with the strict construction in this Circuit of a court's removal jurisdiction, *see RGI Events*, 2019 WL 935498, at *2, which mandates that any ambiguities must be resolved in favor of remand, *see Johnson-Brown*, 257 F. Supp. at 177. Moreover, in *O'Hern*, the plaintiff refused to confirm the extent of the statutory damages she was seeking, admitting instead that the value of her damages "*probably* d[id] not exceed $75,000.00," to which the court objected that "Plaintiff [could] not have it both ways" by "disclaim[ing] damages in excess of $75,000 in order to defeat federal jurisdiction but preserv[ing] her right to recover more than that amount by refusing to admit or stipulate to the jurisdictional limit." 2008 WL 5100460, at *2 (emphasis in original, quotations omitted). From the start of this case, plaintiff has made no such attempt to "preserve her right to recover" damages in excess of $75,000. In *Troiani*, in addition to claims under a state consumer protection law akin to the CPPA, plaintiff sought "actual damages as well as statutory penalties, exemplary damages, treble damages, and attorney's fees" related to five causes of action, including for breach of contract, which claims together the Court found "exceed[ed] $75,000." 2006 WL 1851378, at *1–*2. Here, the suggestion that the damages available to plaintiff would be anywhere near $75,000 is significantly more dubious, given she brings only two causes of action and seeks only statutory damages under a statute capping payouts at $1,500 per violation.

[7]  Defendant emphasizes that "only *$1,001* of the amount-in-controversy requirement must come from attorneys' fees, punitive damages, and the cost of complying with any injunctive relief," Def.'s Opp'n at 7 (emphasis in original), since "the amount in controversy is met almost entirely by the damages figure," *id.* at 5 n.2. Proximity to the jurisdictional threshold, however, is not a factor in determining whether the amount in controversy is $75,001 or above, which federal law plainly requires. *See* 28 U.S.C. § 1332(a).

request for attorney's fees, *see* Compl. at 30, this amount is too speculative to be counted toward the amount in controversy for jurisdictional purposes.

When a contract or statute provides that attorney's fees may be included in a judgment against a defendant, the estimated value of these fees may be considered in determining the amount in controversy. *See Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Inst. for Truth in Mtkg. v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 90 (D.D.C. 2018) ("[A]lthough 28 U.S.C. § 1332 excludes interest and costs from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action." (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997))). The CPPA is one such statute, *see* D.C. CODE § 28-3905(k)(2)(B), and so courts applying the CPPA generally "consider . . . attorney's fees in [their] calculation of the amount in controversy," *Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344, 353 (D.D.C. 2018); *see also Organic Consumers Ass'n v. Handsome Brook Farm Group 2, LLC*, 222 F. Supp. 3d 74, 78 (D.D.C. 2016); *Zuckman*, 958 F. Supp. 2d at 301–02. Under the Supreme Court's non-aggregation principle, however, which requires that "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement," *Snyder v. Harris*, 394 U.S. 332, 335 (1969), when a plaintiff brings a CPPA claim on behalf of the general public, the attorney's fees must be apportioned such that only the fees properly attributable to the plaintiff herself are considered as part of the amount in controversy. Notably, attorney's fees added to the amount in controversy may not be "speculative." *Animal Legal Def. Fund*, 249 F. Supp. 3d at 63.

Here, the record before the Court is entirely insufficient to estimate the attorney's fees available to plaintiff, let alone to calculate the *pro rata* portion of the total that would properly be

attributed to her for purposes of determining the amount in controversy. Unlike in other suits where the court has attributed attorney's fees toward the amount in controversy, the parties here have provided no information as to plaintiff's attorney's billing rate or the estimated number of hours worked. *See, e.g, Zuckman*, 985 F. Supp. 2d at 301 (factoring attorney's fees into the amount in controversy where plaintiff's counsel had presented an affidavit averring that they expected to spend 1,750 or more hours if the suit went to trial, and where evidence before the court indicated plaintiff's counsel were "working on a contingency fee basis"); *Animal Legal Def. Fund*, 249 F. Supp. 3d at 63 (finding that "a blended billing rate" based on plaintiff's fees in similar cases and "[c]onclusory assertions and rhetoric" about the hours "Plaintiff's attorneys will assuredly spend" were "too speculative to satisfy the amount in controversy requirement" (quotations omitted)); *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 74 (D.D.C. 2014) (finding that a failure to present evidence for the basis of the attorney's fees, plaintiff's attorney's hours on the suit, rendered the cited attorney's fees "speculation" and precluded their use in an amount in controversy calculation). Without information as to how much work plaintiff's counsel expects to do on this suit or how much plaintiff's counsel would be compensated for that work, the Court has no way of determining the amount of attorney's fees at issue in the suit—let alone to calculate the *pro rata* portion to attribute to plaintiff for purposes of determining the amount in controversy. *See Breakman v. AOL, LLC*, 545 F. Supp. 2d 96, 107 (D.D.C. 2008) (explaining that the attorney's fees cited by defendant could not be credited because "the amount recoverable is based on pure conjecture"); *Sloan*, 2015 WL 9272838, at *9–*10 (declining to credit defendant's "bald assertions" regarding the estimated cost of plaintiff's attorney's fees, which "were speculative and unsupported," given that "adding . . . a speculative

11

amount of damages" for attorney's fees "to the speculative amount of [statutory] damages does not make the sum less speculative").[8]

### C. Equitable Relief

Finally, in addition to statutory damages and attorney's fees, the Complaint "asks this [C]ourt to award . . . an injunction against the Defendant's[] violations of the CPPA," Compl. at 30, the cost of which defendant seeks to include in the amount in controversy. *See* Def.'s Not. ¶¶ 14–15. While the Complaint itself contains no further specifics regarding the nature of the injunction, or the cost of implementing any injunctive relief, *see generally* Compl., defendant points to the cover sheet filed along with the Complaint in D.C. Superior Court, which states that plaintiff is demanding "[e]quitable relief in excess of $10,000." Superior Ct. Cover Sheet at 1. The total cost of an injunction generally is considered from defendant's perspective—in other words, what defendant's *burden* would be in complying. Yet, defendant fails to provide its own estimate of the cost of compliance with some form of injunctive relief related to its Golden Butter crackers or even to advocate for a method of calculating the cost of injunctive relief, *see generally* Def.'s Opp'n, leaving the record blank in assessing such a cost, other than plaintiff's brief statement about seeking "injunctive relief in excess of $10,000," Pl.'s Mem. at 2. Given how far the statutory damages and attorney's fees, summed together, are from reaching the $75,000 jurisdictional threshold, the "excess of $10,000" in equitable relief plaintiff seeks does little to bridge the gap.[9]

---

[8]  Even adopting defendant's preferred approach of the "33% rule" used in *Zuckman*, 958 F. Supp. 2d at 301, and estimating attorney's fees to be 33% of the total statutory damages awarded, *see* Def.'s Opp'n at 6–7, this amount would fall far short of reaching the requisite amount in controversy. Should the statutory damages available to plaintiff amount to $3,000, *see supra* Part III.A., the corresponding attorney's fees award would be $990, with the total amount in issue remaining far below the necessary threshold for the exercise of jurisdiction.

[9]  To the extent that plaintiff's Superior Court Cover Sheet and Complaint can be viewed as indicating different requests for relief, the Court credits the latter, which would render the cost of the equitable relief even more speculative and less relevant for purposes of determining the amount in controversy. Plaintiffs are not always bound by the information conveyed in a cover sheet, and a complaint may supersede or clarify what is provided in the

As both parties concede, the cost of complying with an injunction is appropriately included in the amount in controversy for purposes of 28 U.S.C. § 1332(a), Pl.'s Mot. at 4; Def.'s Not. ¶ 13, but may not be aggregated across multiple plaintiffs and must instead be allocated to each plaintiff on a *pro rata* basis, Pl.'s Mot. at 4; Def.'s Opp'n at 5 n.2, 7.  *See also Earth Island Inst. v. Coca-Cola Co.*, No. 21-cv-1926 (PLF), 2022 WL 872605, at *4 (D.D.C. Mar. 24, 2022) (collecting cases and observing that "courts[] in this district . . . have uniformly held that in analogous cases 'the cost of the injunction must be divided pro rata among District of Columbia consumers'" (quoting *Earth Island Inst. v. BlueTriton Brands*, No. 21-cv-2659 (JEB), 2022 WL 252031, at *3 (D.D.C. Jan. 27, 2022))).  Here, using $10,000 as the cost of the injunction, and distributing those costs amongst all of the consumers "relieved" by the injunction, meaning the members of the D.C. public "on whose behalf Plaintiff brings the action," *see Inst. for Truth in Mktg.*, 321 F. Supp. 3d at 91, the *pro rata* cost of the proposed injunction on plaintiff or any other one person would be *de minimis*.  Thus, the cost of injunctive relief, when appropriately attributed to plaintiff, would bring the amount in controversy no closer to $75,000.[10]

*       *       *

In sum, defendant has fallen far short of demonstrating that the amount in controversy between the parties exceeds $75,000, as required for the exercise of diversity jurisdiction, under

---

cover sheet.  *See, e.g.*, *Apton*, 233 F. Supp. 3d at 15 (defendant's reliance on the $100,000 figure provided on plaintiff's civil cover sheet was not sufficient to serve as a basis for federal diversity jurisdiction because the record indicated a lower amount in controversy); *Bramson v. Gill*, No. 21-cv-1280 (ABJ), 2022 WL 2111543, at *1 n.1, *2 (D.D.C. Apr. 14, 2022) (finding that plaintiff pleaded diversity jurisdiction, even though plaintiff had indicated he was seeking federal question jurisdiction in his civil cover sheet).

[10]     Although the Complaint specifies that plaintiff is requesting "an injunction" as equitable relief, Compl. ¶ 7, defendant argues that the reference to "equitable relief" on the Superior Court Cover Sheet *could* include "disgorgement of profits – also an equitable remedy," and one which is "solely attributed to the plaintiff for purposes of amount in controversy," Def.'s Opp'n at 8 n.5 (citing *Zuckman*, 958 F. Supp. at 303–04).  Unlike in *Zuckman*, however, plaintiff here makes no express request for disgorgement of profits or restitution, and such a request will not be extrapolated or read into the pleading to meet a jurisdictional threshold.  *See Earth Island Inst. v. Coca-Cola Co.*, 2022 WL 872605, at *5; *Food & Water Watch, Inc. v. Tyson Foods, Inc.*, No. 19-cv-2811 (APM), 2020 WL 1065553, at *4 (D.D.C. Mar. 5, 2020); *Reigner v. Ingersoll-Rand Co.*, 461 F. Supp. 2d 1, 2 (D.D.C. 2004).

28 U.S.C. § 1332(a). Defendant has failed to establish that the damages available to plaintiff under the CPPA are at or anywhere near the $74,000 ceiling she places on her request, given that plaintiff alleges only two violations of the CPPA, stemming from a single purchase of a box of defendant's Golden Butter crackers. What is more, the attorney's fees advanced by defendant are too uncertain to apply toward the amount in controversy, and defendant's accounting for plaintiff's "equitable relief" request fails to bring the parties to a sufficient amount in controversy. "[R]esolv[ing] any ambiguities concerning the propriety of removal in favor of remand," *Zuckman*, 958 F. Supp. 2d at 297, this case is remanded to D.C. Superior Court for all further proceedings.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff's Motion to Remand to District of Columbia Superior Court, ECF No. 8, is GRANTED. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: September 19, 2022

_____
BERYL A. HOWELL
Chief Judge